IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARLOS REED,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION (USW) AND UNITED STEELWORKERS, DISTRICT 7,<br><br>    Defendants. | Case No. 3:24-cv-192-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) and United Steelworkers, District 7 (collectively, "the Union"). (Doc. 28). Plaintiff Carlos Reed ("Reed") filed a response in opposition. (Doc. 30). For the reasons set forth below, the Union's motion to dismiss is granted.

## BACKGROUND

The Court accepts as true the following facts, which are taken from the Amended Complaint. (Doc. 27). Reed, who is Black or African American, worked at Solvay Fluorides, LLC's Alorton, Illinois plant from June 17, 1991, until his termination on March

28, 2022. (*Id.* at ¶¶ 12-13). Reed became a master mechanic in 2014. (*Id.* at ¶ 14). He was fired for allegedly removing scrap material from Solvay and for unauthorized entrance onto Solvay's premises. (*Id*. at ¶ 25).

While employed with Solvay, Reed was a member of the collective bargaining unit there. (*Id.* at ¶ 15). The Union entered into a collective bargaining agreement with Solvay effective August 1, 2019, and was the sole representative of the members of the collective bargaining unit. (*Id.* at ¶¶ 16-17). The collective bargaining agreement set forth a four-step grievance process with the last step being a demand for arbitration that could only be carried out by the Union. (*Id.* at ¶¶ 18-19, 21-22). Any member of the collective bargaining unit is permitted to file a grievance under the collective bargaining agreement. (*Id*. at ¶ 20).

Reed filed several grievances with the Union throughout his employment at Solvay, including grievances concerning the terms and conditions of his employment and minor disciplinary action taken against him. (*Id*. at ¶ 23). The Union did not take any of these grievances to arbitration. (*Id*. at ¶ 24).

Reed filed another grievance following his termination for the alleged theft of scrap materials and improper entry onto Solvay's property. (*Id*. at ¶ 25). The grievance went through the first three steps of the process, and the Union demanded arbitration pursuant to step four of the grievance process. (*Id*. at ¶¶ 26-27). The grievance, however, ultimately did not proceed to arbitration. (*Id*. at ¶ 28). Instead, the Union settled the grievance and withdrew it. (*Id*. at ¶ 29). The settlement agreement provided that if Reed withdrew his grievance, Solvay would not prosecute Reed for his actions and would

provide Reed with a neutral employment recommendation. (*Id*. at ¶ 30). Reed was not aware of this settlement, nor did he agree to settle or withdraw his grievance. (*Id*. at ¶ 31). In fact, Reed asserts that he would not have agreed to the withdrawal of his grievance because he believed his termination was wrongful and the result of racial discrimination. (*Id*. at ¶ 32). Reed also alleges that the Union did not conduct any investigation into whether the removal of scrap by employees was condoned by management at Solvay, whether similarly situated employees were treated differently than Reed, or whether his termination was the result of racial discrimination. (*Id.* at ¶¶ 33-35).

On December 13, 2022, Reed filed a charge against the Union with the Illinois Department of Human Rights ("IDHR"). (*Id*. at ¶ 7). Reed alleged the Union violated its duty of fair representation related to the processing of his grievance and that the violation was the result of discrimination on the basis of Reed's race. (*Id*.). On September 19, 2023, the IDHR found that there was a lack of substantial evidence supporting Reed's claim of racial discrimination. (*Id*. at ¶ 8). As permitted under the Illinois Human Rights Act ("IHRA"), Reed then filed a civil action in the Circuit Court of St. Clair County, Illinois, within 90 days of the IDHR's finding of no substantial evidence of discrimination. (*Id*. at ¶¶ 9-10).

The Union removed the case to this Court on January 29, 2024. (Doc. 11). Reed then amended his complaint to assert a claim of discrimination in violation of 42 U.S.C. §1981 (Count 1) and discrimination in violation of the IHRA (Count 2). Upon the Union's filing of the instant Motion to Dismiss (Doc. 28), Reed agreed to voluntarily dismiss his IHRA

claim in Count II. (Doc. 30 at p. 3). Thus, Count II shall be dismissed, and the Court will proceed to analyze only whether Reed has stated a § 1981 claim for discrimination.

## LEGAL STANDARD

A defendant's motion to dismiss may be granted in instances where the plaintiff's complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). For a plaintiff to survive a motion to dismiss, the complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To be plausible, an allegation must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The factual allegations stated in the amended complaint will be taken as true and interpreted in "the light most favorable" to the plaintiff. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). However, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are not entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 663. This standard does not require "detailed factual allegations." *Bell Atl. Corp.*, 550 U.S. at 555. Rather, it simply requires that that the plaintiff gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## DISCUSSION

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To establish a

race discrimination claim against a union under § 1981, a plaintiff must demonstrate that the union refused to process his grievances because of his race or his earlier complaints about race. *Webb v. AFSCME Council 31*, No. 19-CV-4192, 2020 WL 919260, at *2 (N.D. Ill. Feb. 26, 2020) (citing *Green v. AFT/IFT Local 604*, 740 F.3d 1104, 1107 (7th Cir. 2014)); *see also Chapman v. AFSCME Council 31, Loc. 3477*, No. 17 C 8125, 2019 WL 214478, at *6 (N.D. Ill. Jan. 16, 2019) (§ 1981 "prohibit[s] unions from discriminating on the basis of race in the way they represent their members"). In other words, a racial discrimination claim under § 1981 requires a plaintiff to show that the union would have processed his grievances had he been white. *Id.* (citing *Green*, 740 F.3d at 1107).

Here, Reed asserts, in a conclusory fashion, that the Union discriminated against him when it settled and withdrew his grievance without his knowledge or consent. Reed has not, however, alleged any facts from which it can be inferred that there is a connection between Reed's race and the Union's decision to settle and withdraw his grievance. He also does not claim that the Union would have taken a different route with a White employee. This is insufficient to state a claim for discrimination under § 1981.

Reed also claims the Union did not investigate whether the removal of scrap by employees was a practice condoned by management, whether similarly situated employees were treated differently, and whether his termination was the result of racial discrimination. He further alleges that the Union has not conducted any investigation regarding the decrease in Black employees at the Alorton facility or the firing of almost all Black probationary employees in the recent past. However, "a union does not have an affirmative duty 'to investigate and rectify discrimination by the employer.'" *Okoro v.*

*Cook Cnty. Health & Hosp. Sys.*, No. 19-CV-06061, 2021 WL 2413152, at *6 (N.D. Ill. June 14, 2021) (quoting *EEOC v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003)). Inaction is not discrimination "in any accepted sense of the term." *Pipefitters*, 334 F.3d at 660.

That said, a union's "selective inaction" in some circumstances can violate § 1981. *Id.* at 661. As discussed above, a union discriminates where it refuses to investigate a Black employee's grievance but *would* investigate a White employee's grievance. *Id.* A union also violates § 1981 if it "decided as a matter of policy not to grieve complaints of discrimination by [B]lack members of the bargaining unit because the company is hostile to such complaints and the union fears that this hostility will make it harder for the union to succeed in its dealings with the company." *Id.*

Again, Reed has not alleged that the Union refused to investigate his grievance but would have investigated a White employee's grievance. Nor has he asserted that the Union has decided, as a matter of policy, not to grieve complaints by its Black members. Nor could he—Reed's Complaint admits that the Union demanded arbitration on his behalf pursuant to step four of the negotiated grievance process. Although that arbitration never occurred due to the parties' settlement, the fact that the Union demanded arbitration as to Reed's grievance negates any claim that the Union was selectively inactive in violation of § 1981.

## Conclusion

For these reasons, the Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) and United Steelworkers, District 7 (Doc. 28) is **GRANTED**. The Amended Complaint is **DISMISSED without prejudice**.

The Court **GRANTS** Reed leave to file a Second Amended Complaint that addresses these pleading deficiencies on or before **May 21, 2025**.

**IT IS SO ORDERED.**

**DATED:  April 21, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**